Lewis N. Stoddard, Bar Number 60723896
HALLIDAY, WATKINS & MANN, P.C.
Attorneys for U.S. Bank Trust National
Association as Trustee of the Tiki Series III
Trust
376 East 400 South, Suite 300
Salt Lake City, UT 84111
Telephone: 801-355-2886
Fax: 801-328-9714
Email: lewis@hwmlawfirm.com
File No: 51603

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MONTANA

| | |
|---|---|
| In re: | Bankruptcy Case No. 17-60270 BPH |
| KEENAN P. ZENTZ AND HEIDI L. ZENTZ | Chapter 13 |
| Debtors. | |

## MOTION FOR COURT APPROVAL OF MODIFICATION TO HOME MORTGAGE LOAN AS TO U.S. BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF THE TIKI SERIES III TRUST

U.S. Bank Trust National Association as Trustee of the Tiki Series III Trust, hereinafter referred to as ("Secured Creditor"), hereby moves the Court pursuant for an order approving a modification of the Debtors' home mortgage loan with respect to the following described real property (the "property") located in Custer County, State of Montana:

THE WESTERLY 75 FEET OF LOT 1 IN BLOCK 25 OF SNYDER ADDITION TO THE TOWN, NOW CITY OF MILES CITY, CUSTER COUNTY, MONTANA, ACCORDING TO THE OFFICIAL PLAT AND SURVEY OF SAID ADDITION NOW ON FILE AND OF RECORD IN THE OFFICE OF THE COUNTY CLERK AND RECORDER IN AND FOR CUSTER COUNTY, MONTANA; AND THE WESTERLY 75 FEET OF THE ACCRETION OR ADDITION TO SAID LOT 1 IN BLOCK 25 OF SNYDER ADDITION, ACCORDING TO THE OFFICIAL PLAT AND SURVEY OF SNYDER ADDITION ACCRETION IN BLOCKS 25, 26, 28 AND UNPLATTED BLOCK, FLIED FOR RECORD AS DOCUMENT NO. 193652 IN ENVELOPE NO. 22 OF THE PLAT CABINET IN THE OFFICE OF THE COUNTY CLERK AND RECORDER IN AND FOR CUSTER COUNTY, MONTANA. AND THAT PORTION OF LOT 1 IN BLOCK 25 OF SNYDER ADDITION TO THE TOWN, NOW CITY OF MILES CITY, CUSTER COUNTY, MONTANA AND THE ACCRETION OR ADDITION THERETO, DESCRIBED AS FOLLOWS: COMMENCING AT A POINT 75 FEET EAST OF THE NORTHWEST CORNER OF SAID LOT 1, AND RUNNING THENCE SOUTH 160 FEET; THENCE EAST 10 FEET; THENCE NORTH 160 FEET; THENCE WEST 10 FEET TO THE POINT OF BEGINNING, ALL ACCORDING TO THE PLAT AND SURVEY THEREOF ON FILE AND OF RECORD IN THE OFFICE OF THE COUNTY CLERK AND RECORDER IN AND FOR CUSTER COUNTY, MONTANA;

Commonly known as 1502 Tompy Street, Miles City, MT 59301.

This Motion is made and based on an amalgamation of the instant pleadings and exhibits and all other pleadings, statements and schedules on file herein.

## POINTS AND AUTHORITIES

1. That on or about October 27, 2015, Debtors executed a Note in the principal amount of $195,100.00 ("Note"), along with a Deed of Trust, originally in favor of Mortgage Electronic Registration Systems, Inc. as nominee for Nationstar Mortgage LLC, its successors and assigns, which granted a security interest in the real property, located at 1502 Tompy Street, Miles City, MT 59301. Copies of the Note and Deed of Trust are attached hereto as Exhibit "A".

2. The Note and beneficial interest in the Deed of Trust was subsequently transferred from Mortgage Electronic Registration Systems, Inc. as nominee for Nationstar Mortgage LLC and its successors and assigns to Nationstar Mortgage LLC by an Assignment of Deed of Trust recorded with the Custer County Recorder on August 24, 2017, Entry Number 168705; then from Nationstar Mortgage LLC to US Bank Trust N.A., as Trustee of the Bungalow Series III Trust by an Assignment of Deed of Trust recorded with the Custer County Recorder on October 31, 2018, Entry Number 171405; then from US Bank Trust N.A., as Trustee of the Bungalow Series III Trust to U.S. Bank Trust National Association as Trustee of the Tiki Series III Trust by an Assignment of Deed of Trust recorded with the Custer County Recorder on December 6, 2018, Entry Number 171570. Copies of the Assignments are attached hereto as Exhibit "B".

3. Under the terms of the original promissory note, the Debtor was obligated to make

payments under a fixed rate basis at the rate of 4.500% with monthly principal and interest payments in the amount of $988.54.

4. Debtors filed their voluntary Chapter 13 petition on March 31, 2017.

5. The parties have since entered into negotiations for modification of the subject mortgage loan based upon the Debtors' representations of financial hardships in making payments required under the note. On or about August 20, 2019, the parties executed an agreement and modification to the Note. A copy of said agreement is attached hereto as Exhibit "C".

6. Under the terms of the loan modification, the interest rate terms were changed to 6.000% with monthly principal and interest payments in the amount of $1,147.63 beginning with the August 1, 2019 payment. The parties believe that the loan modification agreement is in the best interest of all involved.

7. Secured Creditor now seeks Court approval of the loan modification and the subsequent change in the Debtors' finances.

WHEREFORE, Secured Creditor respectfully requests:

1. That the Court approve the terms of the modification to the Promissory Note dated October 27, 2015;

2. Award all other remedies that the Court may find reasonable and just. DATED this 17th day of July 2020.

/s/ Lewis N. Stoddard
Lewis N. Stoddard
Attorney for Secured Creditor

NOTICE OF OPPORTUNITY TO RESPOND
AND REQUEST A HEARING

If you object to the motion, you must file a written responsive pleading and request a hearing within fourteen (14) days of the date of the motion. The objecting party shall schedule the hearing and shall include in the caption of the responsive pleading in bold and conspicuous print the date, time and location of the hearing by inserting in the caption the following:

**NOTICE OF HEARING**
**Date:** _____
**Time:** _____
**Location:** _____

This contested matter shall be scheduled for hearing by the responding party for the next hearing date scheduled in the division within which the case is filed. The date, time and location of the hearing can be obtained from the Clerk of Court or from the Court's website at www.mtb.uscourt.gov. and shall be set forth in the response.

If you fail to file a written response to the above Motion for Court Approval of Modification to Home Mortgage Loan with the particularity required by Mont. LBR 4001-1(c), and request a hearing, within fourteen (14) days of the date of this Notice, with service on the undersigned and all parties entitled to service under all applicable rules, then your failure to respond or to request a hearing will be deemed an admission that the motion for relief should be granted without further notice or hearing.

DATED this 17th day of July 2020.

/s/ Lewis N. Stoddard
_____
Lewis N. Stoddard
Attorney for Secured Creditor

<u>CERTIFICATE OF SERVICE</u>

I, the undersigned, do hereby certify under penalty of perjury that on the 17th day of July 2020, a copy of the foregoing Motion for Court Approval of Modification to Home Mortgage Loan and Notice of Opportunity to Respond was served by electronic means pursuant to LBR 9013-1(d)(2) on the parties noted in the Court's ECF transmission facilities and/or by mail on the following parties:

Keenan P. Zentz and Heidi L. Zentz
1502 Tompy St.
Miles City, MT 59301
Debtors
Via U.S. Mail

Juliane E. Lore
3201 Hesper Rd., Ste. 5
Billings, MT 59102
Debtors Attorney
Via ECF

Robert G. Drummond
PO Box 1829
Great Falls, MT 59403
Chapter 13 Trustee
Via ECF

United States Trustee
720 Park Blvd, Ste 220
Boise, ID 83712
Via ECF

/s/ Lewis N. Stoddard
Lewis N. Stoddard
Attorney for Secured Creditor

# EXHIBIT "A"

# NOTE

# NOTE

MIN: ▮▮▮▮▮▮▮                                    Loan Number: ▮▮▮▮▮▮▮

OCTOBER 27, 2015                  MILES CITY              MONTANA
[Date]                             [City]                  [State]

1502 TOMPY STREET, MILES CITY, MONTANA 59301
[Property Address]

## 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 195,100.00          (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is NATIONSTAR MORTGAGE LLC, A DELAWARE LIMITED LIABILITY COMPANY

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.  INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of      4.500    %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3.  PAYMENTS

(A)  Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the   1st   day of each month beginning on DECEMBER 1 2015      . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on  NOVEMBER 1, 2045          , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at  P.O. BOX 650783, DALLAS, TEXAS 75265-0783

or at a different place if required by the Note Holder.

(B)  Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $  988.54

## 4.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit;

and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6.   BORROWER'S FAILURE TO PAY AS REQUIRED

(A)   Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of        15 calendar days after the date it is due, I will pay a late charge to the Note Holder.  The amount of the charge will be   5.000 % of my overdue payment of principal and interest.  I will pay this late charge promptly but only once on each late payment.

(B)   Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C)   Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount.  That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D)   No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E)   Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law.  Those expenses include, for example, reasonable attorneys' fees.

## 7.   GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8.   OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed.  Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things.  Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note.  The Note Holder may enforce its rights under this Note against each person individually or against all of us together.  This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9.   WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor.  "Presentment" means the right to require the Note Holder to demand payment of amounts due.  "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10.   UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions.  In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep

the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)     _____ (Seal)
KEENAN F. ZENTZ        -Borrower     HEIDI L. ZENTZ        -Borrower

_____ (Seal)     _____ (Seal)
                       -Borrower                          -Borrower

_____ (Seal)     _____ (Seal)
                       -Borrower                          -Borrower

"Pay to the order of without recourse"

By: _____
Nationstar Mortgage LLC
A Delaware Limited Liability Company
Aaron Alla, Assistant Secretary

[Sign Original Only]

MULTISTATE FIXED RATE NOTE--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3200  1/01                    Page 3 of 3

DocMagic *eForms*
www.docmagic.com

# DEED OF TRUST

**164501   Fee: $133.00**
Custer County Recorded 11/4/2015 At 4:17 PM
Linda Corbett, Clk & Rcdr By *Linda Corbett*
Return to: SPL Inc. 1486 Colorado Blvd
Los Angeles CA 90041

After Recording Return To:

NATIONSTAR MORTGAGE LLC ATTN: PC TRAILING DOCUMENTS
4000 HORIZON WAY
IRVING, TEXAS 75063
Loan Number: ███████

————— [Space Above This Line For Recording Data] —————

# DEED OF TRUST
## Trust Indenture Under the Small Tract Financing Act of Montana

MIN: ████████████                                    MERS Phone: 888-679-6377

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated   OCTOBER 27, 2015                , together with all Riders to this document.
(B) "Borrower" is   KEENAN P. ZENTZ AND HEIDI L. ZENTZ, HUSBAND AND WIFE AS JOINT TENANTS WITH FULL RIGHTS OF SURVIVORSHIP

Borrower is the trustor under this Security Instrument.
(C) "Lender" is  NATIONSTAR MORTGAGE LLC

Lender is a   DELAWARE LIMITED LIABILITY COMPANY                                    organized
and existing under the laws of   DELAWARE
Lender's address is   8950 CYPRESS WATERS BLVD, DALLAS, TEXAS 75019

(D) "Trustee" is  Fidelity National Title Insurance
2099 Gateway Pl Ste 100, San Jose, California 95110

(E) "MERS" is the Mortgage Electronic Registration Systems, Inc. Lender has appointed MERS as the nominee for Lender for this Loan, and attached a MERS Rider to this Security Instrument, to be executed by Borrower, which further describes the relationship between Lender and MERS, and which is incorporated into and amends and supplements this Security Instrument.
(F) "Note" means the promissory note signed by Borrower and dated  OCTOBER 27, 2015

---

MONTANA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3027  1/01 (rev. 12/03)                         Page 1 of 14

*DocMagic EForms*
*www.docmagic.com*

After Recording Return To:
NATIONSTAR MORTGAGE LLC ATTN: PC TRAILING DOCUMENTS
4000 HORIZON WAY
IRVING, TEXAS 75063
Loan Number: ███████

———————————————— [Space Above This Line For Recording Data] ————————————————

# DEED OF TRUST
## Trust Indenture Under the Small Tract Financing Act of Montana

MIN: ███████████████                              MERS Phone: 888-679-6377

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated   OCTOBER 27, 2015           , together with all Riders to this document.

(B) "Borrower" is   KEENAN P. ZENTZ AND HEIDI L. ZENTZ, HUSBAND AND WIFE AS JOINT TENANTS WITH FULL RIGHTS OF SURVIVORSHIP

Borrower is the trustor under this Security Instrument.

(C) "Lender" is  NATIONSTAR MORTGAGE LLC

Lender is a   DELAWARE LIMITED LIABILITY COMPANY                                    organized and existing under the laws of   DELAWARE
Lender's address is  8950 CYPRESS WATERS BLVD, DALLAS, TEXAS 75019

(D) "Trustee" is  Fidelity National Title Insurance
2099 Gateway Pl Ste 100, San Jose, California 95110

(E) "MERS" is the Mortgage Electronic Registration Systems, Inc. Lender has appointed MERS as the nominee for Lender for this Loan, and attached a MERS Rider to this Security Instrument, to be executed by Borrower, which further describes the relationship between Lender and MERS, and which is incorporated into and amends and supplements this Security Instrument.

(F) "Note" means the promissory note signed by Borrower and dated  OCTOBER 27, 2015

MONTANA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3027 1/01 (rev. 12/03)                  Page 1 of 14                   DocMagic €Forms
www.docmagic.com

The Note states that Borrower owes Lender ONE HUNDRED NINETY-FIVE THOUSAND ONE HUNDRED AND 00/100 Dollars (U.S. $ 195,100.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than NOVEMBER 1, 2045 . This Security Instrument secures 150% of the amount of the Note.

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

- [ ] Adjustable Rate Rider
- [ ] Balloon Rider
- [ ] 1-4 Family Rider
- [ ] Condominium Rider
- [ ] Planned Unit Development Rider
- [ ] Biweekly Payment Rider
- [ ] Second Home Rider
- [X] Other(s) [specify]
  M E R S RIDER

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

MONTANA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3027  1/01 (rev. 12/03)                Page 2 of 14                DocMagic eForms
www.docmagic.com

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

| COUNTY | of | CUSTER | : |

[Type of Recording Jurisdiction]    [Name of Recording Jurisdiction]

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.: ▮▮▮▮▮▮▮▮▮

which currently has the address of    1502 TOMPY STREET

[Street]

MILES CITY                , Montana    59301        ("Property Address"):
[City]                                 [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check,

MONTANA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3027  1/01 (rev. 12/03)                    Page 3 of 14                    DocMagic *eForms*
www.docmagic.com

treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section

MONTANA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3027  1/01 (rev 12/03)                     Page 4 of 14                     DocMagic *eForms*
www.docmagic.com

15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.  **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.  **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of

any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from

deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.  **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.  **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10.  **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable,

notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note. Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage Insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount

MONTANA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3027 1/01 (rev 12/03)    Page 8 of 14    DocMagic *eForms*
www.docmagic.com

of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the

MONTANA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3027  1/01 (rev. 12/03)                                    Page 8 of 14                                    DocMagic *eFormus*
                                                                                                               www.docmagic.com

absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an

Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Lender or Trustee shall record a notice of sale in each county in which any part of the Property is located, and Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. After the time required by Applicable Law and after publication and posting of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it or to the clerk or recorder of the county in which the sale took place.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a

MONTANA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3027 1/01 (rev 12/03)                    Page 12 of 14                    DocMagic *eFerma*
www.docmagic.com

fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

25. **Area of Property.** The area of the Property is not more than 40 acres.

26. **Waiver of Homestead Exemption Rights.** In conformance with the provisions of § 70-32-202, M.C.A., this transaction involving a mortgage upon real property for purposes of securing a debt on premises, as subject hereto, and executed and acknowledged by the husband and wife, or by an unmarried person, the undersigned grantors have by separate written waiver, which waiver is incorporated herein by this reference, waived, renounced and abandoned for themselves and their family, any and all homestead exemption rights or other exemption law now or subsequently enforced within the State of Montana, or any other state or territory where judgment may be entered by virtue of this agreement or in the event of a sale pursuant to the provisions of the Montana Small Tract Financing Act.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
KEENAN P. ZENTZ            -Borrower

_____ (Seal)
HEIDI L. ZENTZ             -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

————————— [Space Below This Line For Acknowledgment] —————————

State of <u>MONTANA</u>

County of <u>CUSTER</u>

This record was acknowledged before me on <u>Oct 27, 2015</u>
                                                    (date)

by <u>KEENAN P. ZENTZ AND HEIDI L. ZENTZ</u>

<u>Nanci P Harrington</u>
Signature of notarial officer

<u>Signing Concultant</u>
Title

(Official Stamp)                My commission expires: <u>Nov 15, 2016</u>



NANCI P HARRINGTON
NOTARY PUBLIC for the
State of Montana
Residing at Glendive, MT
My Commission Expires
November 15, 2016

MONTANA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3027 1/01 (rev 12/03)                Page 14 of 14

DocMagic *DocMagic*
www.docmagic.com

Title No [REDACTED]

## LEGAL DESCRIPTION

### EXHIBIT "A"

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF CUSTER, STATE OF MT, AND IS DESCRIBED AS FOLLOWS:

THE WESTERLY 75 FEET OF LOT 1 IN BLOCK 25 OF SNYDER ADDITION TO THE TOWN, NOW CITY OF MILES CITY, CUSTER COUNTY, MONTANA, ACCORDING TO THE OFFICIAL PLAT AND SURVEY OF SAID ADDITION NOW ON FILE AND OF RECORD IN THE OFFICE OF THE COUNTY CLERK AND RECORDER IN AND FOR CUSTER COUNTY, MONTANA;

AND

THE WESTERLY 75 FEET OF THE ACCRETION OR ADDITION TO SAID LOT 1 IN BLOCK 25 OF SNYDER ADDITION, ACCORDING TO THE OFFICIAL PLAT AND SURVEY OF SNYDER ADDITION ACCRETION IN BLOCKS 25, 26, 28 AND UNPLATTED BLOCK, FLIED FOR RECORD AS DOCUMENT NO. 193652 IN ENVELOPE NO. 22 OF THE PLAT CABINET IN THE OFFICE OF THE COUNTY CLERK AND RECORDER IN AND FOR CUSTER COUNTY, MONTANA.

AND

THAT PORTION OF LOT 1 IN BLOCK 25 OF SNYDER ADDITION TO THE TOWN, NOW CITY OF MILES CITY, CUSTER COUNTY, MONTANA AND THE ACCRETION OR ADDITION THERETO, DESCRIED AS FOLLOWS: COMMENCING AT A POINT 75 FEET EAST OF THE NORTHWEST CORNER OF SAID LOT 1, AND RUNNING THENCE SOUTH 160 FEET; THENCE EAST 10 FEET; THENCE NORTH 160 FEET; THENCE WEST 10 FEET TO THE POINT OF BEGINNING, ALL ACCORDING TO THE PLAT AND SURVEY THEREOF ON FILE AND OF RECORD IN THE OFFICE OF THE COUNTY CLERK AND RECORDER IN AND FOR CUSTER COUNTY, MONTANA.

Parcel ID: [REDACTED]

Commonly known as 1502 Tompy Street, Miles City, MT 59301
However, by showing this address no additional coverage is provided

# MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. RIDER
## (MERS Rider)

THIS MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. RIDER ("MERS Rider") is made this 27th day of OCTOBER, 2015 , and is incorporated into and amends and supplements the Deed of Trust (the "Security Instrument") of the same date given by the undersigned (the "Borrower," whether there are one or more persons undersigned) to secure Borrower's Note to NATIONSTAR MORTGAGE LLC, A DELAWARE LIMITED LIABILITY COMPANY ("Lender") of the same date and covering the Property described in the Security Instrument, which is located at:

### 1502 TOMPY STREET, NILES CITY, MONTANA 59301
### [Property Address]

In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree that the Security Instrument is amended as follows:

## A. DEFINITIONS

1. The Definitions section of the Security Instrument is amended as follows:

"Lender" is NATIONSTAR MORTGAGE LLC .
Lender is a DELAWARE LIMITED LIABILITY COMPANY organized and existing under the laws of DELAWARE . Lender's address is 8950 CYPRESS WATERS BLVD, DALLAS, TEXAS 75019

Lender is the beneficiary under this Security Instrument. The term "Lender" includes any successors and assigns of Lender.

"MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is the Nominee for Lender and is acting solely for Lender. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. MERS is appointed as the Nominee for Lender to exercise the rights, duties and obligations of Lender as Lender may from time to time direct, including but not limited to appointing a successor trustee, assigning, or releasing, in whole or in part this Security Instrument, foreclosing or directing Trustee to institute foreclosure of this Security Instrument, or taking such other actions as Lender may deem necessary or appropriate under this Security Instrument. The term "MERS" includes any successors and assigns of MERS. This appointment shall inure to and bind MERS, its successors and assigns, as well as Lender, until MERS' Nominee interest is terminated.

2. The Definitions section of the Security Instrument is further amended to add the following definition:

"Nominee" means one designated to act for another as its representative for a limited purpose.

B.   TRANSFER OF RIGHTS IN THE PROPERTY

The Transfer of Rights in the Property section of the Security Instrument is amended to read as follows:

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

| COUNTY | of | CUSTER | : |

[Type of Recording Jurisdiction]          [Name of Recording Jurisdiction]

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.: ███████████

which currently has the address of  1502 TOMPY STREET

[Street]

MILES CITY                    MONTANA              59301               ("Property Address"):
[City]                        [State]              [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

Lender, as the beneficiary under this Security Instrument, designates MERS as the Nominee for Lender. Any notice required by Applicable Law or this Security Instrument to be served on Lender must be served on MERS as the designated Nominee for Lender. Borrower understands and agrees that MERS, as the designated Nominee for Lender, has the right to exercise any or all interests granted by Borrower to Lender, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, assigning and releasing this Security Instrument, and substituting a successor trustee.

C.   NOTICES

Section 15 of the Security Instrument is amended to read as follows:

15.  Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless

Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Borrower acknowledges that any notice Borrower provides to Lender must also be provided to MERS as Nominee for Lender until MERS' Nominee interest is terminated. Any notice provided by Borrower in connection with this Security Instrument will not be deemed to have been given to MERS until actually received by MERS. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

### D. SALE OF NOTE; CHANGE OF LOAN SERVICER; NOTICE OF GRIEVANCE
Section 20 of the Security Instrument is amended to read as follows:

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. Lender acknowledges that until it directs MERS to assign MERS's Nominee interest in this Security Instrument, MERS remains the Nominee for Lender, with the authority to exercise the rights of Lender. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

E.  SUBSTITUTE TRUSTEE

Section 24 of the Security Instrument is amended to read as follows:

24. **Substitute Trustee.** In accordance with Applicable Law, Lender or MERS may from time to time appoint a successor trustee to any Trustee appointed hereunder who has ceased to act. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this MERS Rider.

_____ (Seal)
KEENAN P. ZENTZ                   -Borrower

_____ (Seal)
HEIDI L. ZENTZ                    -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

MERS RIDER - Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3158  04/2014                          Page 4 of 4

*DocMagic eForms*
*www.docmagic.com*

# EXHIBIT "B"

Recording Requested By·
Nationstar Mortgage

When Recorded Return To:

DOCUMENT ADMINISTRATION
Nationstar Mortgage
8950 CYPRESS WATERS BLVD
COPPELL, TX  75019

**168705  Fee: $21.00**

**Custer County Recorded 8/24/2017 At 1:52 PM**
**Linda Corbett, Clk & Rcdr By** _Pamela Carlett_
**Return to: Mackoff Kellogg Law Firm 38 2nd Avenue East**
**Dinkinson ND 58601**

<u>CORPORATE ASSIGNMENT OF DEED OF TRUST</u>

Custer, Montana
SELLER'S SERVICING # ██████ "ZENTZ"

MIN #: ██████     SIS #: 1-888-679-6377

Date of Assignment: August 8th, 2017
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ("MERS"), AS DESIGNATED
NOMINEE FOR NATIONSTAR MORTGAGE LLC, BENEFICIARY OF THE SECURITY INSTRUMENT,
ITS SUCCESSORS AND ASSIGNS at P.O. BOX 2026, FLINT, MI 48501-2026
Assignee: NATIONSTAR MORTGAGE LLC at 8950 CYPRESS WATERS BLVD., COPPELL, TX  75019

Executed By: KEENAN P. ZENTZ AND HEIDI L. ZENTZ, HUSBAND AND WIFE AS JOINT TENANTS
WITH FULL RIGHTS OF SURVIVORSHIP  To: MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC., AS NOMINEE FOR NATIONSTAR MORTGAGE LLC
Date of Deed of Trust: 10/27/2015 Recorded: 11/04/2015 as Instrument No.: 164501 In the County of
Custer, State of Montana.

Property Address: 1502 TOMPY STREET, MILES CITY, MT  59301

Legal:  See Exhibit "A" Attached Hereto And By This Reference Made A Part Hereof

MERS is appointed as the nominee for the Beneficiary to exercise the rights, duties and obligations of
the Beneficiary as Beneficiary may from time to time direct, including but not limited to appointing a
successor trustee, assigning, or releasing, in whole or in part the Security Instrument, foreclosing or
directing the trustee to institute foreclosure of the Security Instrument, or taking such other actions as
Beneficiary may deem necessary or appropriate under the Security Instrument.
The Beneficiary designates MERS as the nominee for the Beneficiary and any notice required by
applicable law or the Security Instrument to be served on the Beneficiary must also be served on MERS
as the designated nominee for Beneficiary.

    KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and
sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named
Assignee, the said Deed of Trust having an original principal sum of $195,100.00 with interest, secured
thereby, and the full benefit of all the powers and of all the covenants and provisos therein contained,
and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's interest under
the Deed of Trust.

    TO HAVE AND TO HOLD the said Deed of Trust, and the said property unto the said Assignee
forever, subject to the terms contained in said Deed of Trust. IN WITNESS WHEREOF, the assignor
has executed these presents the day and year first above written:

    MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ("MERS"), AS DESIGNATED
NOMINEE FOR NATIONSTAR MORTGAGE LLC, BENEFICIARY OF THE SECURITY INSTRUMENT,
ITS SUCCESSORS AND ASSIGNS
On August 8th, 2017

By: _____
OMAR BASPED, Assistant Secretary

CORPORATE ASSIGNMENT OF DEED OF TRUST Page 2 of 2

STATE OF Texas
COUNTY OF Dallas

On August 8th, 2017, before me, COLLEEN BARNETT, a Notary Public in and for Dallas in the State of Texas, personally appeared OMAR BASPED, Assistant Secretary, personally known to me to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

COLLEEN BARNETT
Notary Expires: 11/30/2019  #130453613

COLLEEN BARNETT
Notary Public, State of Texas
Comm. Expires 11-30-2019
Notary ID 130453613

(This area for notarial seal)

**168705  Fee: $21.00**
**Custer County Recorded 8/24/2017 At 1:52 PM**

**168705  Fee: $21.00**
**Custer County Recorded 8/24/2017 At 1:52 PM**

Recording Requested By:
Nationstar Mortgage

When Recorded Return To:

DOCUMENT ADMINISTRATION
Nationstar Mortgage
8950 CYPRESS WATERS BLVD
COPPELL, TX  75019

---

## CORPORATE ASSIGNMENT OF DEED OF TRUST

**Custer, Montana**
**SELLER'S SERVICING** ▮▮▮▮▮▮▮   "ZENTZ"

**MIN #:** ▮▮▮▮▮▮▮   **SIS #: 1-888-679-6377**

Date of Assignment: August 8th, 2017
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ("MERS"), AS DESIGNATED
NOMINEE FOR NATIONSTAR MORTGAGE LLC, BENEFICIARY OF THE SECURITY INSTRUMENT,
ITS SUCCESSORS AND ASSIGNS at  P.O. BOX 2026, FLINT, MI  48501-2026
Assignee: NATIONSTAR MORTGAGE LLC at 8950 CYPRESS WATERS BLVD., COPPELL, TX  75019

Executed By: KEENAN P. ZENTZ AND HEIDI L. ZENTZ, HUSBAND AND WIFE AS JOINT TENANTS
WITH FULL RIGHTS OF SURVIVORSHIP  To: MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC., AS NOMINEE FOR NATIONSTAR MORTGAGE LLC
Date of Deed of Trust:  10/27/2015 Recorded:  11/04/2015  as Instrument No.: 164501  In the County of
Custer, State of Montana.

Property Address: 1502 TOMPY STREET, MILES CITY, MT  59301

Legal:  See Exhibit "A" Attached Hereto And By This Reference Made A Part Hereof

MERS is appointed as the nominee for the Beneficiary to exercise the rights, duties and obligations of
the Beneficiary as Beneficiary may from time to time direct, including but not limited to appointing a
successor trustee, assigning, or releasing, in whole or in part the Security Instrument, foreclosing or
directing the trustee to institute foreclosure of the Security Instrument, or taking such other actions as
Beneficiary may deem necessary or appropriate under the Security Instrument.
The Beneficiary designates MERS as the nominee for the Beneficiary and any notice required by
applicable law or the Security Instrument to be served on the Beneficiary must also be served on MERS
as the designated nominee for Beneficiary.

     KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and
sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named
Assignee, the said Deed of Trust having an original principal sum of $195,100.00 with interest, secured
thereby, and the full benefit of all the powers and of all the covenants and provisos therein contained,
and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's interest under
the Deed of Trust.

     TO HAVE AND TO HOLD the said Deed of Trust, and the said property unto the said Assignee
forever, subject to the terms contained in said Deed of Trust.  IN WITNESS WHEREOF, the assignor
has executed these presents the day and year first above written:

  MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ("MERS"), AS DESIGNATED
NOMINEE FOR NATIONSTAR MORTGAGE LLC, BENEFICIARY OF THE SECURITY INSTRUMENT,
ITS SUCCESSORS AND ASSIGNS
On August 8th, 2017

By: _____
OMAR BASPED, Assistant Secretary

CORPORATE ASSIGNMENT OF DEED OF TRUST Page 2 of 2

STATE OF Texas
COUNTY OF Dallas

On August 8th, 2017, before me, COLLEEN BARNETT, a Notary Public in and for Dallas in the State of Texas, personally appeared OMAR BASPED, Assistant Secretary, personally known to me to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

COLLEEN BARNETT
Notary Expires: 11/30/2019  #130453613

COLLEEN BARNETT
Notary Public, State of Texas
Comm. Expires 11-30-2019
Notary ID 130453613

(This area for notarial seal)

Title No ▓▓▓▓▓▓▓▓

## LEGAL DESCRIPTION

### EXHIBIT "A"

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF CUSTER, STATE OF MT, AND IS DESCRIBED AS FOLLOWS:

THE WESTERLY 75 FEET OF LOT 1 IN BLOCK 25 OF SNYDER ADDITION TO THE TOWN, NOW CITY OF MILES CITY, CUSTER COUNTY, MONTANA, ACCORDING TO THE OFFICIAL PLAT AND SURVEY OF SAID ADDITION NOW ON FILE AND OF RECORD IN THE OFFICE OF THE COUNTY CLERK AND RECORDER IN AND FOR CUSTER COUNTY, MONTANA;

AND

THE WESTERLY 75 FEET OF THE ACCRETION OR ADDITION TO SAID LOT 1 IN BLOCK 25 OF SNYDER ADDITION, ACCORDING TO THE OFFICIAL PLAT AND SURVEY OF SNYDER ADDITION ACCRETION IN BLOCKS 25, 26, 28 AND UNPLATTED BLOCK, FLIED FOR RECORD AS DOCUMENT NO. 193652 IN ENVELOPE NO. 22 OF THE PLAT CABINET IN THE OFFICE OF THE COUNTY CLERK AND RECORDER IN AND FOR CUSTER COUNTY, MONTANA.

AND

THAT PORTION OF LOT 1 IN BLOCK 25 OF SNYDER ADDITION TO THE TOWN, NOW CITY OF MILES CITY, CUSTER COUNTY, MONTANA AND THE ACCRETION OR ADDITION THERETO, DESCRIED AS FOLLOWS: COMMENCING AT A POINT 75 FEET EAST OF THE NORTHWEST CORNER OF SAID LOT 1, AND RUNNING THENCE SOUTH 160 FEET; THENCE EAST 10 FEET; THENCE NORTH 160 FEET; THENCE WEST 10 FEET TO THE POINT OF BEGINNING, ALL ACCORDING TO THE PLAT AND SURVEY THEREOF ON FILE AND OF RECORD IN THE OFFICE OF THE COUNTY CLERK AND RECORDER IN AND FOR CUSTER COUNTY, MONTANA.

Parcel ID ▓▓▓▓▓▓▓▓▓

Commonly known as 1502 Tompy Street, Miles City, MT 59301
However, by showing this address no additional coverage is provided



When Recorded Return To:
Fannie Mae
C/O Nationwide Title Clearing, Inc.
2100 Alt. 19 North
Palm Harbor, FL 34683

Fannie Mae Loan #
Meridian Loan #

171405 Fee: $14.00

Custer County Recorded 10/31/2018 At 2:06 PM
Linda Corbett, Clk & Rcdr By
Return to: Nationwide Title Clearing Inc. 2100 Alt 19 North
Palm Harbor FL 34683

## CORPORATE ASSIGNMENT OF DEED OF TRUST

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, NATIONSTAR MORTGAGE LLC, WHOSE ADDRESS IS 8950 CYPRESS WATERS BLVD., COPPELL, TX 75019, (ASSIGNOR), by these presents does convey, grant, assign, transfer and set over the described Deed of Trust with all interest secured thereby, all liens, and any rights due or to become due thereon to US BANK TRUST N.A., AS TRUSTEE OF THE BUNGALOW Series III TRUST, WHOSE ADDRESS IS 7114 E. STETSON DRIVE, SUITE 250, SCOTTSDALE, AZ 85251, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).

Said Deed of Trust is dated 10/27/2015, and executed by KEENAN P. ZENTZ AND HEIDI L. ZENTZ to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS DESIGNATED NOMINEE FOR NATIONSTAR MORTGAGE LLC, BENEFICIARY OF THE SECURITY INSTRUMENT, ITS SUCCESSORS AND ASSIGNS, and recorded on 11/04/2015 in Book , Page , and/or Document # 164501, in the office of the Recorder of CUSTER County, MT.

SEE EXHIBIT A ATTACHED

Dated this 30th day of October in the year 2018
NATIONSTAR MORTGAGE LLC

JEANETTE ROIKES
VICE PRESIDENT LOAN DOCUMENTATION

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

STATE OF FLORIDA
COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me on this 30th day of October in the year 2018 by Jeanette Roikes as Vice President of Loan Documentation of NATIONSTAR MORTGAGE LLC, who, as such Vice President of Loan Documentation being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

ALYSSA SAY
COMM EXPIRES: 10/02/2022

ALYSSA SAY
NOTARY PUBLIC
STATE OF FLORIDA
COMM# GG249509
EXPIRES: 10/2/2022

Document Prepared By: Dave LaRose/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152

'EXHIBIT A'

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF CUSTER, STATE OF MT, AND IS DESCRIBED AS FOLLOWS: THE WESTERLY 75 FEET OF LOT 1 IN BLOCK 25 OF SNYDER ADDITION TO THE TOWN, NOW CITY OF MILES CITY, CUSTER COUNTY, MONTANA, ACCORDING TO THE OFFICIAL PLAT AND SURVEY OF SAID ADDITION NOW ON FILE AND OF RECORD IN THE OFFICE OF THE COUNTY CLERK AND RECORDER IN AND FOR CUSTER COUNTY, MONTANA; AND THE WESTERLY 75 FEET OF THE ACCRETION OR ADDITION TO SAID LOT 1 IN BLOCK 25 OF SNYDER ADDITION, ACCORDING TO THE OFFICIAL PLAT AND SURVEY OF SNYDER ADDITION ACCRETION IN BLOCKS 25, 26, 28 AND UNPLATTED BLOCK, FILED FOR RECORD AS DOCUMENT NO. 193652 IN ENVELOPE NO. 22 OF THE PLAT CABINET IN THE OFFICE OF THE COUNTY CLERK AND RECORDER IN AND FOR CUSTER COUNTY, MONTANA. AND THAT PORTION OF LOT 1 IN BLOCK 25 OF SNYDER ADDITION TO THE TOWN, NOW CITY OF MILES CITY, CUSTER COUNTY, MONTANA AND THE ACCRETION OR ADDITION THERETO, DESCRIED AS FOLLOWS: COMMENCING AT A POINT 75 FEET EAST OF THE NORTHWEST CORNER OF SAID LOT 1, AND RUNNING THENCE SOUTH 160 FEET; THENCE EAST 10 FEET; THENCE NORTH 160 FEET; THENCE WEST 10 FEET TO THE POINT OF BEGINNING, ALL ACCORDING TO THE PLAT AND SURVEY THEREOF ON FILE AND OF RECORD IN THE OFFICE OF THE COUNTY CLERK AND RECORDER IN AND FOR CUSTER COUNTY, MONTANA.

**171570  Fee: $24.00**

Custer County Recorded 12/6/2018 At 8:01 AM
Linda Corbett, Clk & Rcdr By _Linda Corbett_
Return to: Meridian Asset Services 3201 34th street south Sui
Saint Petersburg FL 33711

Prepared By and Return To:
Kathleen Collins
Collateral Department
Meridian Asset Services, LLC
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
(727) 497-4650

_Space above for Recorder's use_

Loan No:
Svcr Ln No:

## ASSIGNMENT OF DEED OF TRUST

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF THE BUNGALOW SERIES III TRUST**, whose address is 7114 E. STETSON DR., SUITE 250, SCOTTSDALE, ARIZONA 85251, (ASSIGNOR), does hereby grant, assign and transfer to **US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF THE TIKI SERIES III TRUST**, whose address is 7114 E. STETSON DR., SUITE 250, SCOTTSDALE, ARIZONA 85251, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain deed of trust, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Deed of Trust: **10/27/2015**
Original Loan Amount: **$195,100.00**
Executed by (Borrower(s)): **KEENAN P. ZENTZ & HEIDI L. ZENTZ**
Original Trustee: **FIDELITY NATIONAL TITLE INSURANCE**
Original Beneficiary: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR NATIONSTAR MORTGAGE, LLC, ITS SUCCESSORS AND ASSIGNS**
Filed of Record:  In Book N/A, Page N/A,
Document/Instrument No: **164501** in the Recording District of CUSTER, MT, Recorded on 11/4/2015.

Property more commonly described as: **1502 TOMPY STREET, MILES CITY, MONTANA 59301**

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: _11-26-2018_

**US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF THE BUNGALOW SERIES III TRUST, BY MERIDIAN ASSET SERVICES, LLC, ITS ATTORNEY-IN-FACT**

By: STEVEN JANICEK
Title: VICE PRESIDENT

Witness Name: RACHEL GILE

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of        **FLORIDA**
County of     **PINELLAS**

On _11/26/18_, before me, **KIMBERLY JEAN LITCHFIELD**, a Notary Public, personally appeared **STEVEN JANICEK, VICE PRESIDENT** of/for **MERIDIAN ASSET SERVICES, LLC, AS ATTORNEY-IN-FACT FOR US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF THE BUNGALOW SERIES III TRUST**, personally known to me, or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of **FLORIDA** that the foregoing paragraph is true and correct. I further certify STEVEN JANICEK, signed, sealed, attested and delivered this document as a voluntary act in my presence.

Witness my hand and official seal.

_(signature)_

KIMBERLY JEAN LITCHFIELD
Commission # GG 177060
Expires January 21, 2022
Bonded Thru Budget Notary Services

(Notary Name): **KIMBERLY JEAN LITCHFIELD**
My commission expires: 01/21/2022

# EXHIBIT "C"

**After Recording Return To:**
BSI Financial Services
Attn: Recording Department
1425 Greenway Drive, Suite 400
Irving, Texas 75038

**Prepared By:**
RUTH RUHL, P.C.
Ruth Ruhl, Esquire
12700 Park Central Drive, Suite 850
Dallas, TX 75251

_____[Space Above This Line For Recording Data]_____

Loan No. █████████
Investor Loan No.: █████████

# LOAN MODIFICATION AGREEMENT
### (Providing for Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this   20th   day of    August, 2019       ,
between  Keenan P Zentz and Heidi L Zentz, husband and wife as joint tenants with full rights of survivorship
("Borrower/Grantor")

and US Bank Trust National Association as Trustee of Tiki Series III Trust

("Lender/Grantee"),
amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated
October 27th, 2015     , recorded November 4th, 2015 , and recorded in Book/Liber N/A         , Page N/A        ,
Instrument No. 164501         , of the           Records of Custer          County, Montana   ,
and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and
personal property described in the Security Instrument and defined therein as the "Property," located at
1502 Tompy Street, Miles City, Montana 59301

---

Loan No.: ███████

the real property described being set forth as follows:
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1.     As of August 1st, 2019          , the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. $ 191,416.15          , consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2.     Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of    6.000    %, from July 1st, 2019          . Borrower promises to make monthly payments of principal and interest of U.S. $ 1,147.63          , beginning on the  1st     day of  August        ,  2019      , and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The yearly rate of  6.000    % will remain in effect until principal and interest are paid in full. If on July 1st, 2049                , (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3.     If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

4.     Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, the Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the specified date in paragraph No. 1 above:

(a)     all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

(b)     all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

---

**MONTANA LOAN MODIFICATION AGREEMENT**
(FNMA Modified Form 3179 1/01 (rev. 04/14))

Loan No.: █████████

    5.      Borrower understands and agrees that:

    (a)     All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

    (b)     All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

    (c)     Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

    (d)     All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

    (e)     Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

    (f)     Borrower authorizes Lender, and Lender's successors and assigns, to share Borrower information including, but not limited to (i) name, address, and telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, (v) payment history, (vi) account balances and activity, including information about any modification or foreclosure relief programs, with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative, or otherwise provide support services related to Borrower's loan. For purposes of this section, Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with Borrower's loan.

Borrower consents to being contacted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan including the trial period plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Third Parties.

By checking this box, Borrower also consents to being contacted by text messaging☐.

    (g)     Borrower hereby absolutely and unconditionally assigns and transfers to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon this assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold estate.

Borrower hereby absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default under this Agreement, pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii)Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments, and other charges on the Property, and then to the sums secure by the Security

Loan No.: ████████

Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9 of the Security Instrument.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

6.     If applicable, by this paragraph, Lender is notifying Borrower that any prior waiver by Lender of Borrower's obligations to pay to Lender Funds for any or all Escrow Items is hereby revoked, and Borrower has been advised of the amount needed to fully fund the Escrow Items.

7.     Borrower will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph.

Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and Borrower shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender and Borrower can

Loan No. ▮▮▮▮▮

agree in writing, however, that interest shall be paid on the Funds. Lender shall provide Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund Borrower any Funds held by Lender.

| | |
|---|---|
| 9/16/19 | _____ (Seal) |
| Date | Keenan P Zentz —Borrower |
| 9-16-19 | _____ (Seal) |
| Date | Heidi L Zentz —Borrower |
| _____ | _____ (Seal) |
| Date | —Borrower |
| _____ | _____ (Seal) |
| Date | —Borrower |

## BORROWER ACKNOWLEDGMENT

State of      Montana                    §
                                         §
County of  Custer                        §

On this  16th day of  September                    ,  2019      , before me,
Gerianne Livingston                        [name of notary], a Notary Public in and for said state,
personally appeared   Keenan P Zentz and Heidi L Zentz

[name of person acknowledged], known to me to be the person who executed the within instrument, and acknowledged to me that he/she/they executed the same for the purpose therein stated.

(Seal)

GERIANNE LIVINGSTON
NOTARY PUBLIC for the
State of Montana
SEAL
Residing at Miles City, Montana
My Commission Expires
July 18, 2023

_Gerianne Livingston_
Notary Signature
Printed Name:_____

Residing at:_____

Notary Public, State of_____
My Commission Expires:

Loan No. ████████

| US Bank Trust National Association as Trustee of Tiki Series III Trust    —Lender | *10/21/19*    -Date |
|---|---|

By: _____

Its: _____ *AVP DEFAULT OPS* _____

## LENDER ACKNOWLEDGMENT

State of                              §
                                     §
County of                            §

    On this            day of                              ,                         , before me,
*[name of notary]*, a Notary Public in and for said state, personally appeared
,
*[name of officer or agent, title of officer or agent]* of  US Bank Trust National Association as Trustee of Tiki Series
III Trust
                                                                     , *[name of entity]*
known to me to be the person who executed the within instrument on behalf of said entity, and acknowledged to me
that he/she/they executed the same for the purpose therein stated.

(Seal)

                                _____
                                Notary Signature
                                Notary Public, State of_____

                                My Commission Expires:

ACKNOWLEDGMENT (MONTANA)                                                    Page 6 of 6

**CALIFORNIA ACKNOWLEDGMENT**                                              CIVIL CODE § 1189

┌─────────────────────────────────────────────────────────────────────────────┐
│ A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document │
│ to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. │
└─────────────────────────────────────────────────────────────────────────────┘

State of California

County of _____**Orange**_____ }

On ____**OCT 3 1 2019**_____ before me, ___**Veronica Escobar, Notary Public**_____,
             *Date*                                  *Here Insert Name and Title of the Officer*

personally appeared ____**NATHAN CADENA**_____
                                        *Name(s) of Signer(s)*

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity
upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the
laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

```
VERONICA ESCOBAR
Notary Public · California
Orange County
Commission # 2302264
My Comm. Expires Aug 20, 2023
```

*Place Notary Seal and/or Stamp Above*

Signature _____
                           *Signature of Notary Public*

Loan No.: ▇▇▇▇▇▇▇

# LOAN MODIFICATION AGREEMENT
# BANKRUPTCY DISCLOSURE ADDENDUM

THIS LOAN MODIFICATION AGREEMENT BANKRUPTCY DISCLOSURE ADDENDUM is made this 20th day of August, 2019 , and is incorporated into and shall be deemed to amend and supplement the Loan Modification Agreement of the same date, given by the undersigned (the "Borrower") which modifies Borrower's Note and Security Instrument to US Bank Trust National Association as Trustee of Tiki Series III Trust

(the "Lender")

and covers the Property located at:

1502 Tompy Street, Miles City, Montana 59301
*[Property Address]*

In addition to the covenants and agreements made in the Loan Modification Agreement, the Borrower and Lender covenant and agree as follows:

1. **Borrower has filed for a Chapter 13 bankruptcy and, Lender's final approval of the Loan Modification Agreement is contingent upon approval of the Loan Modification Agreement by the bankruptcy court.**
2. Borrower will seek a discharge in a Chapter 13 bankruptcy proceeding **AFTER** the execution of Loan Modification Agreement;
3. Borrower understands and acknowledges that Borrower has had an opportunity to consult an attorney of Borrower's own choosing before Borrower executed the Loan Modification Agreement and this Loan Modification Agreement Bankruptcy Disclosure Addendum, and Borrower has either consulted with an attorney or has declined the opportunity to consult with an attorney.

Except as otherwise specifically provided in this Loan Modification Agreement Bankruptcy Disclosure Addendum, the terms of the Loan Modification Agreement will remain unchanged and in full effect.

| | |
|---|---|
| _____ | _____ |
| Keenan P Zentz            -Borrower | Heidi L Zentz            -Borrower |
| _____ | _____ |
| -Borrower | -Borrower. |

LOAN MODIFICATION AGREEMENT BANKRUPTCY DISCLOSURE ADDENDUM                    Page 1 of 2
CHAPTER 13 ACTIVE BANKRUPTCY

Loan No.: ███████

US Bank Trust National Association as
Trustee of Tiki Series III Trust          —Lender

_10/21/19_
                                          -Date

By: _____

Its: _AV P DEFAULT O/S_

Loan No. 

# NOTICE OF NO ORAL AGREEMENTS

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

**Receipt of Notice:** The undersigned hereby represents and warrants that I/we have each received and read a copy of this Notice on or before the execution of the "Loan Agreement." "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, pursuant to which a financial institution loans or delays repayment of or agrees to loan or delay repayment of money, goods, or any other thing of value or to otherwise extend credit or make a financial accommodation.

_____  -Borrower
Keenan P Zentz

_____  -Borrower
Heidi L Zentz

_____  -Borrower

_____  -Borrower

Loan No.: 

# CORRECTION AGREEMENT

**Borrower(s):** Keenan P Zentz and Heidi L Zentz

**Property:** 1502 Tompy Street, Miles City, Montana 59301

Words used in this Agreement are defined below. Words in the singular mean and include the plural and vice versa.

"Borrower" is Keenan P Zentz and Heidi L Zentz.

"Lender" is US Bank Trust National Association as Trustee of Tiki Series III Trust
, and its successors or assigns.
"Loan" means the debt evidenced by the Note and all sums due under the Security Instrument.
"Note" means the promissory note(s) signed by Borrower in favor of Lender or any assignee of Lender.
"Security Instrument" means the Deed of Trust/Mortgage/Security Deed, signed by Borrower in favor of Lender, securing payment of the Note.

AGREEMENT TO CORRECT OR PROVIDE ADDITIONAL DOCUMENTATION OR FEES: In consideration of the Loan Modification Agreement offered by Lender in the amount of $191,416.15 , which modifies the Note and Security Instrument, and regardless of the reason for any loss, misplacement, omission, misstatement or inaccuracy in any Loan documentation, Borrower agrees as follows: If any document is lost, misplaced, omitted, misstated or inaccurately reflects the true and correct terms and conditions of the Loan, upon request of Lender (including any assignee of Lender), Borrower will comply with Lender's request to execute, acknowledge, initial and/or deliver to Lender any documentation Lender deems necessary to replace and/or correct the lost, misplaced, omitted, misstated or inaccurate document(s). All documents Lender requests of Borrower shall be referred to as "Requested Documents." Borrower agrees to deliver the Requested Documents within ten (10) days after receipt by Borrower of a written request for such replacement. Borrower does hereby agree to comply with Lender's request to assure that the Loan documentation executed this date will enable Lender to seek insurance or guaranty from the Department of Housing and Urban Development (HUD) or Department of Veteran's Affairs (VA), if applicable, or to conform with and be acceptable to the Federal National Mortgage Association (FNMA), Federal Home Loan Mortgage Corporation (FHLMC), Government National Mortgage Association (GNMA), or any other investor.

REQUEST BY LENDER: Any request under this Agreement may be made by the Lender (including assignees and persons acting on behalf of the Lender) and shall be prima facie evidence of the necessity for same. A written statement addressed to Borrower at the address indicated in the Loan documentation shall be considered conclusive evidence of the necessity for Requested Documents.

BORROWER LIABILITY: If Borrower fails or refuses to execute, acknowledge, initial or deliver the Requested Documents to Lender within ten (10) days after being requested to do so by Lender, Borrower understands that Lender is relying on the representations contained herein and agrees to be liable for any and all loss or damage which Lender reasonably sustains thereby including, but not limited to, all reasonable attorneys' fees and costs incurred by Lender.

This Agreement shall inure to the benefit of Lender's successors and assigns and be binding upon the heirs, devises, personal representatives, successors and assigns of Borrower.

ACKNOWLEDGMENT OF RECEIPT

**I hereby acknowledge receipt of this Correction Agreement and further acknowledge that I understand its provisions. Words used in this Correction Agreement mean and include the plural and vice versa.**

_____  9/16/19
Keenan P Zentz            -Borrower (Date)

_____  9-16-19
Heidi L Zentz            -Borrower (Date)

_____
-Borrower (Date)

_____
-Borrower (Date)

---

**CORRECTION AGREEMENT**                                     **Page 2 of 2**

Loan No.: ██████

# ATTORNEY SELECTION NOTICE

By signing below, it is understood and agreed that you may hire a lawyer or attorney to advise you regarding this transaction and its consequences.

SELLER:                                   BORROWER:

N/A Modification _____          _____ 9/16/19
                        (Date)            Keenan P Zentz              (Date)

N/A Modification _____          _____ 9-16-19
                        (Date)            Heidi L Zentz               (Date)

_____                           _____
                        (Date)                                       (Date)

_____                           _____
                        (Date)                                       (Date)

**ATTORNEY SELECTION NOTICE -MULTISTATE**                    **Page 1 of 1**

## EXHIBIT "A"

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF CUSTER, STATE OF MT, AND IS DESCRIBED AS FOLLOWS:

THE WESTERLY 75 FEET OF LOT 1 IN BLOCK 25 OF SNYDER ADDITION TO THE TOWN, NOW CITY OF MILES CITY, CUSTER COUNTY, MONTANA, ACCORDING TO THE OFFICIAL PLAT AND SURVEY OF SAID ADDITION NOW ON FILE AND OF RECORD IN THE OFFICE OF THE COUNTY CLERK AND RECORDER IN AND FOR CUSTER COUNTY, MONTANA;

AND

THE WESTERLY 75 FEET OF THE ACCRETION OR ADDITION TO SAID LOT 1 IN BLOCK 25 OF SNYDER ADDITION, ACCORDING TO THE OFFICIAL PLAT AND SURVEY OF SNYDER ADDITION ACCRETION IN BLOCKS 25, 26, 28 AND UNPLATTED BLOCK, FILED FOR RECORD AS DOCUMENT NO. 193652 IN ENVELOPE NO. 22 OF THE PLAT CABINET IN THE OFFICE OF THE COUNTY CLERK AND RECORDER IN AND FOR CUSTER COUNTY, MONTANA;

AND

THAT PORTION OF LOT 1 IN BLOCK 25 OF SNYDER ADDITION TO THE TOWN, NOW CITY OF MILES CITY, CUSTER COUNTY, MONTANA, AND THE ACCRETION OR ADDITION THERETO, DESCRIED AS FOLLOWS: COMMENCING AT A POINT 75 FEET EAST OF THE NORTHWEST CORNER OF SAID LOT 1, AND RUNNING THENCE SOUTH 160 FEET; THENCE EAST 10 FEET; THENCE NORTH 160 FEET; THENCE WEST 10 FEET TO THE POINT OF BEGINNING, ALL ACCORDING TO THE PLAT AND SURVEY THEREOF ON FILE AND OF RECORD IN THE OFFICE OF THE COUNTY CLERK AND RECORDER IN AND FOR CUSTER COUNTY, MONTANA.

Parcel ID █████████

Commonly known as 1502 Tompy Street, Miles City, MT 59301
However, by showing this address no additional coverage is provided